UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- X
KLX, INC., a Delaware Corporation,

                                    Plaintiff,                    No. 15-cv-2782 (LAP)(JCM)

            - against -

DAVID NISSEN and JOAN NISSEN,

                                    Defendants.
------------------------------------------------------------------------- X


**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT
AND FOR A MORE DEFINITE STATEMENT**



## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

ALLEGED FACTS ............................................................................................... 2

PLAINTIFF'S CLAIMS ....................................................................................... 6

ARGUMENT ........................................................................................................ 7

POINT I       PLAINTIFF FAILS TO STATE A CLAIM
              FOR BREACH OF CONTRACT ............................................................ 8

              A.    The PRAs Are Unenforceable Anti-Competitive Contracts ........... 8

              B.    Plaintiff Fails to Plead Either a Breach or Damages .................... 12

POINT II      PLAINTIFF FAILS TO STATE A CLAIM FOR
              MISAPPROPRIATION OF TRADE SECRETS .................................... 13

              A.    Plaintiff Does Not Sufficiently Allege Its Trade Secrets ............. 13

              B.    Plaintiff Does Not Sufficiently Allege Misappropriation ............. 15

POINT III     PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH
              OF THE DUTY OF LOYALTY ............................................................. 16

POINT IV      PLAINTIFF IS NOT ENTITLED TO PERMANENT
              INJUNCTIVE RELIEF ......................................................................... 17

POINT V       THE COURT SHOULD ORDER PLAINTIFF TO
              PROVIDE A MORE DEFINITE STATEMENT OF
              ANY OF THE COUNTS IT DOES NOT DISMISS ............................. 18

CONCLUSION .................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                      <u>PAGE</u>

*ATSI Cmmcns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ...................................................................................7

*Alexander Interactive, Inc. v. Leisure Pro Ltd.*,
No. 14 Civ. 2796, 2014 WL 4651942 (S.D.N.Y. Sept. 16, 2014).............................13, 14

*Applied Info. Mgmt., Inc. v. Icart*,
976 F. Supp. 149 (E.D.N.Y. 1997)........................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .........................................................................................7, 12

*BDO Seidman v. Hirshberg*,
93 N.Y.2d 382 (1999).......................................................................................9, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................7, 8, 14

*Buhler v. Michael P. Maloney Consulting, Inc.*,
299 A.D.2d 190 (1st Dep't 2002)......................................................................11, 14

*Delville v. Firmenich*, *Inc.*,
920 F. Supp. 2d 446 (S.D.N.Y. 2013) ................................................................16, 17

*DeWitt Stern Grp., Inc. v. Eisenberg*,
No. 13 Civ. 3060, 2013 WL 5815512 (S.D.N.Y. Oct. 29, 2013)...................................11

*Diesel Props S.R.l. v. Greystone Bus. Credit II LLC*,
631 F.3d 42 (2d Cir. 2011) ..................................................................................8

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ..........................................................................................17

*Estee Lauder Cos. Inc. v. Batra*,
430 F. Supp. 2d 158 (S.D.N.Y. 2006) .......................................................................9

*Fada Int'l Corp. v. Cheung*,
57 A.D.3d 406 (1st Dep't 2008).............................................................................16

*Faiveley Trans. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009) ................................................................................13

*Farricker v. Penson Dev., Inc.,*
No. 07 Civ. 11191, 2010 WL 845983 (S.D.N.Y. Mar. 4, 2010) ...................................... 16

*Frantic, LLC v. Konfino,*
No. 13 Civ. 4516, 2013 WL 5870211 (S.D.N.Y. Oct. 30, 2013) ....................................... 9

*H. Meer Dental Supply Co. v. Commisso,*
269 A.D.2d 662 (3d Dep't 2000) ........................................................................ 11, 14, 15

*Jacobs v. Carnival Corp.,*
No. 06 Civ. 0606, 2009 WL 856637 (S.D.N.Y. Mar. 25, 2009) ....................................... 7

*In re Methyl Tertiary Butyl Ether Prods. Liab. Lit.,*
No. 08 Civ. 00312, 2008 U.S. Dist. LEXIS 59026 (S.D.N.Y. Aug. 4, 2008) ................... 18

*In re Reserve Fund Secs. and Derivative Litig. v. Reserve Mgmt Co., Inc.,*
No. 09 Civ 4346, 2013 WL 5432334 (S.D.N.Y. Sept. 30, 2013) ..................................... 17

*Int'l Bus. Machs. Corp. v. Visentin,*
No. 11 Civ. 399, 2011 WL 672025 (S.D.N.Y. Feb. 16, 2011),
*aff'd,* 437 Fed. App'x. 53 (2d Cir. 2011) ................................................................... 9, 11

*Kelly v. L.L. Cool J,*
145 F.R.D. 32, 37 (S.D.N.Y. 2002) ................................................................................ 18

*Laurent v. G & G Bus Serv., Inc.,*
No. 10 Civ. 4055, 2011 WL 2683201 (S.D.N.Y. May 17, 2011) ..................................... 2

*N. Atl. Instruments, Inc. v. Haber,*
188 F.3d 38 (2d Cir. 1999) .............................................................................................. 13

*Peyton v. PWV Acquisition LLC,*
39 Misc. 3d 1228(A) (Sup. Ct. N.Y. Co. 2013) ............................................................. 17

*Phansalkar v. Andersen Weinroth & Co., L.P.,*
344 F.3d 184 (2d Cir. 2003) ............................................................................................ 16

*Purchasing Assoc. v. Weitz,*
13 N.Y.2d 267 (1963) ........................................................................................................ 9

*Reed, Roberts Assocs., Inc. v. Strauman,*
40 N.Y.2d 303 ................................................................................................................... 8

*Rothstein v. UBS AG,*
708 F.3d 82 (2d Cir. 2013) ............................................................................................... 7

*Savannah Bank, N.A. v. Savings Bank of the Fingerlakes*,
261 A.D.2d 917 (4th Dep't 1999)........................................................................11

*Silipos, Inc. v. Bickel*,
No. 06 Civ. 02205, 2006 WL 2265055 (S.D.N.Y. Aug. 8, 2006)..................................14

*Tactica Int'l, Inc. v. Atl. Horizon Int'l, Inc.*,
154 F. Supp.2d 586 (S.D.N.Y. 2001) ............................................................15

## STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 8 ....................................................................................6

Fed. R. Civ. P. 12(b)................................................................................7

Fed. R. Civ. P. 12(e)...............................................................................18

Defendants David Nissen and Joan Nissen (together, "Defendants" or the "Nissens"), by and through their attorney Ruskin Moscou Faltischek, P.C., respectfully submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss with prejudice the complaint of plaintiff KLX, Inc. ("Plaintiff" or "KLX"), dated April 9, 2015 (the "Complaint").  Alternatively, Defendants seek a more definite statement pursuant to Fed. R. Civ. P. 12(e).

## PRELIMINARY STATEMENT

This is a baseless lawsuit to recover an unspecified amount of "damages" from defendants David Nissen and Joan Nissen, described in the Complaint as former employees of plaintiff KLX, Inc. who took copies of certain "highly confidential" and "trade secret" information from KLX when they left the company.  Both of the Nissens have admitted to taking information from KLX upon their departure, but have repeatedly represented that they have not used or disseminated the information.  They even offered to return the information to KLX.

That should have ended the matter.  But, apparently unsatisfied with the Nissens' offers to return the information, KLX initiated this lawsuit to recover "damages" it allegedly incurred by virtue of the Nissens' conduct.  KLX alleges that the Nissens breached certain agreements with KLX by taking the information; misappropriated KLX's trade secrets; and breached the duty of loyalty they owed to KLX as employees.  KLX also seeks to permanently enjoin the Nissens from disclosing KLX's information to third parties.

The Complaint, however, is fundamentally flawed in that it fails to allege that the Nissens have used or disseminated KLX's information, or that KLX has been damaged in any way by the Nissens' conduct.  Lacking these crucial facts, the Complaint does not allege facts sufficient to

sustain any of its claims.  The claims also fail because the agreements at issue are unenforceable and the information taken by the Nissens does not warrant trade secret protection.

The Complaint does not state a claim upon which relief can be granted by this Court and should be dismissed.  Alternatively, KLX should be directed to provide a more definite statement of its claims.

## ALLEGED FACTS[1]

KLX describes itself as the "world's leading distributor of aerospace fasteners and consumables and full-service provider of inventory management solutions for the commercial, business jet, and military markets worldwide." (Cplt. ¶ 29).

Defendants David and Joan Nissen are former employees of KLX and its predecessor B/E Aerospace ("B/E"). (*Id*. ¶¶ 12-14, 43).  David Nissen was a Group Program Manager for KLX, and Joan Nissen was a Senior Manager of Sales. (*Id.* ¶ 16).  In their respective roles, the Nissens managed three main Original Equipment Manufacturer market segments for KLX – The Boeing Company IMM and EEP Programs ("Boeing"), Middle River Aircraft Systems, a division of GE Aviation ("Middle River"), and Meggitt PLC ("Meggitt"). (*Id.*).  These three market segments allegedly constitute a combined revenue in excess of $40 million for KLX's business. (*Id.*).

On February 16, 2015, the Nissens both resigned from KLX. (*Id.* ¶ 43).  Their last day of employment was February 27, 2015, when they joined M3 Technology, LLC ("M3 Tech"), an alleged competitor of KLX. (*Id.* ¶¶ 43, 44).  At an unspecified time after the Nissens' resignations from the company, KLX reviewed each of the Nissens' KLX e-mail accounts. (*Id.*

---

[1]  Defendants recognize that, solely for the purposes of this motion, the Court must accept as true all well-pleaded factual allegations in the Complaint. *Laurent v. G & G Bus Serv., Inc.*, No. 10 Civ. 4055, 2011 WL 2683201, at *2 (S.D.N.Y. May 17, 2011).  Defendants reserve the right to challenge the veracity of the allegations if further pleading is necessary.

¶ 46).  That review revealed that both of the Nissens sent e-mails from their KLX e-mail accounts to their personal e-mail accounts during the weeks before they left the company.  (*Id.* ¶¶ 43-45, 72-73).

David Nissen allegedly sent sixteen e-mails to his personal e-mail account with attachments consisting of Excel Spreadsheets, correspondence, .pdf files and .txt files containing:

- "Special Business Provisions . . . Between the Boeing Company and [KLX]," which specified part prices and service fees (*id.* ¶ 50);

- "part numbers, supplier information, UOP and pricing information that accompanies" an agreement with Boeing (*id.*);

- "information regarding Interturbine, a division of KLX" (*id.* ¶ 51);

- "pricing information and pricing structures used to pitche and evaluate deals for Boeing," such as "KLX's costs and resale price suggestions; which are based on KLX's proprietary regional pricing model, historical sales price data and pricing per KLX's Unit of Measure" (*id.* ¶ 52);

- KLX's entire parts list for quoted and purchased materials for GE Aviation/Middle River, as well as information regarding GE Aviation's "purchase requirements and lead time availability with target dates extending through October 2015" (*id.* ¶ 53);

- "a list of parts quoted to Boeing in the Integrated Materials Management ('IMM') and EPP programs," with information regarding "quantities of parts ordered, pricing information, proprietary KLX employee remarks and work product" (*id.*  ¶¶ 54-55);

- "a list of parts relative to quoting a Boeing IMM contract," including part numbers, quotes, purchase locations and manufacturing information" (*id.* ¶ 56);

- "information regarding part, quantity, pricing and transition date information for an early February 2015 SIA EPP parts to transition" (*id.* ¶ 57);

- "pricing, quantity and cost information relative to parts to support Boeing customers" (*id.* ¶ 58);

- "a . . . quote sent by GKN Aerospace (a large airframe subcontractor) to B/E-KLX employees with . . . part numbers, quantity of aircraft, purchase orders, pricing information, and projected requirements through 2019" (*id.* ¶ 59);

- "parts manufactured and sold by KLX for the Airbus A320," including "pricing, quantity, distribution and customer information" (*id.* ¶¶ 61-62 );

- "pricing, quantity and cost information relative to parts to support the Boeing 747 aircraft" (*id.* ¶ 63);

- "over 50,000 line entries of information regarding each part sold by B/E-KLX beginning in 2012," such as "part numbers, quantities purchased, total price, financial cost information, profit to B/E-KLX, profit margin, booking dates, CNV pricing, and aggregated information for the entire Boeing EPP and Boeing IMM accounts" (*id.* ¶ 64); and

- "a quote by Esterline Engineered Materials," which contained "quantity, pricing information for Middle River" (*id.* ¶ 65).

Joan Nissen sent two e-mails to her personal e-mail account with attachments consisting of Excel Spreadsheets and correspondence containing:

- "information regarding issues with Boeing inventory and discussing various points of contact at the company" (*id.* ¶ 72); and

- "a list of KLX salespeople, the customer accounts they managed, and the types, quantity and value of parts needed by each customer," which essentially was "KLX's playbook for its major accounts" (*id.* ¶ 73).

Plaintiff alleges that all of the above listed information (collectively, the "KLX Information") – characterized as customer requirements, points of contact, vendor lists, pricing, cost and/or volume information – is highly confidential and trade secret.  (*Id.* ¶¶ 67, 74).  KLX claims that it compiled the KLX Information through extraordinary efforts and expense and, if disseminated, it would give a competitor an advantage in the marketplace to undercut KLX's efforts to gain a contract.  (*Id.* ¶¶ 50-67, 72-74).

Notably, Plaintiff does not allege that the Nissens have used or disseminated the KLX Information.  It alleges only that the Nissens "intend to use this information in their new employment with [M3 Tech]," and that M3 Tech can use the information about part pricing, quantity, vendor and distribution channels to compete with KLX and undercut it in competitive bidding process.  (*Id.* at p. 1 & ¶ 45).

KLX claims that it takes reasonable measures to maintain the secrecy of the KLX Information, including password protection for access to all computer-based applications, physical security measures to protect hard files, firewalls, and limiting access to only certain authorized users. (*Id.* ¶ 28). Additionally, a significant portion of the KLX Information allegedly is located in multi-tiered password protected databases and servers, which:

- are accessible only to key employees, and only if they were in a position to support a contract to ensure that requirements are fulfilled;

- are only available via the Company intranet or secured Virtual Private Network after a user's creditials have been validated upon logging on to a local computer or KLX monitored device;

- require password authentication to access it via external sockets and SSL 128 bit encryption is employed;

- require users to change their login credentials every 60-90 days; and

- require passwords to contain a combination of alphanumeric characters and symbols.

(*Id.* ¶¶ 24-25). The Nissens had access to the KLX Information by virtue of their respective roles at KLX. (*Id.* ¶¶ 32-33).

To further maintain the confidentiality of its confidential, proprietary and trade secret information, KLX also requires its employees to sign a Proprietary Rights Agreement, prohibiting any direct or indirect disclosure of KLX's proprietary and confidential information. (*Id.* ¶ 35). In February 2012, David and Joan Nissen each signed a Proprietary Rights Agreement (together, the "PRAs") with KLX.[2] (*Id.* ¶¶ 35-36).

In the PRAs, the Nissens agreed, in pertinent part, to "maintain in confidence and . . . not disclose or use, either during or after the [duration of their employment], any 'Proprietary Information.'" (*Id.* ¶ 37). The Nissens also agreed not to take any "Proprietary Information"

---

[2]   The PRAs are actually between each of the Nissens and B/E. However, B/E allegedly assigned its rights to the PRAs to KLX. (*Id.* ¶¶ 14, 15).

without KLX's permission, and to return any such information upon termination of their employment.  (*Id.* ¶ 39 & Ex. E, § 4).  The term "Proprietary Information" is defined broadly in the PRAs, encompassing virtually every single piece of information the Nissens learned about or came across during the course of their employment at KLX.  (*Id.* ¶ 38 & Ex. E, § 2).

KLX also has a "Code of Business Conduct" which prohibits employees from, in pertinent part:

> . . . disclos[ing] the Company's confidential or proprietary information to anyone within or outside the Company unless the recipient legitimately needs the information . . . ., or is an outsider who has been properly authorized by management to receive such information.

(*Id.* ¶ 41 & Ex. F).  Both of the Nissens received and acknowledged the Code of Business Conduct during their employment at B/E.  (*Id.,* Ex. G & H).

## PLAINTIFF'S CLAIMS

Plaintiff asserts four claims against each of the Nissens.  The First Claim is for breach of contract.  The Complaint alleges that the Nissens breached their respective PRA, as well as unspecified KLX "policies and procedures," when they allegedly "t[ook] and disclos[ed] KLX's confidential and proprietary information or know-how to third parties."  (*Id.* ¶¶ 82-87).

The Second Claim is for misappropriation of trade secrets.  The Complaint alleges that the KLX Information is trade secret, and that the Nissens misappropriated those trade secrets when they, through improper means and in breach of the PRA, e-mailed the KLX Information to their personal e-mail accounts.  (*Id.* ¶¶ 88-98).

The Third Claim is for breach of the duty of loyalty, based upon the duty of loyalty owed by the Nissens to KLX, as employees, and their alleged disclosure of "KLX's confidential information or know-how to third parties."  (*Id.* ¶¶ 99-106).

- 6 -

The Fourth Claim is for a permanent injunction prohibiting the Nissens from disclosing the KLX Information to third parties.  The Complaint alleges that, due to the Nissens purported misappropriation of the KLX Information and disclosure of it to third parties, KLX will suffer irreparable harm in the absence of an injunction.  (*Id.* ¶¶ 107-111)

Each of these four claims should be dismissed.  None of them states a claim upon which relief can be granted.  Alternatively, Defendants seek a more definite statement pursuant to Fed. R. Civ. P. 12(e).

## ARGUMENT

### Standard on a Motion to Dismiss

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted where the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)).  In sum, a "plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Cmmcns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  In ruling on a motion to dismiss, the Court may assume the truth of well-pleaded facts, but it should not accept as true any "legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678; *see also Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

These standards reflect the requirement of Fed. R. Civ. P. 8 that a complaint contain factual allegations sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."   *Twombly*, 550 U.S. at 555.   Rule 8 prevents "the fishing expedition dreaded in discovery" from being "launched prematurely in the Complaint." *Jacobs v. Carnival Corp.*, No. 06 Civ. 0606, 2009 WL 856637, *6-7 (S.D.N.Y. Mar. 25, 2009).

## POINT I

## PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

To state a claim for a breach of contract under New York law, a plaintiff must plead plausible facts regarding:   (1) the existence of a contract; (2) performance of the plaintiff's obligations; (3) breach by the defendant; and (4) damages to the plaintiff caused by the breach. *Diesel Props S.R.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).

KLX fails to plead the first, third and fourth elements.  Its claim for breach of the PRAs, as well as unspecified "policies and procedures," should be dismissed.

## A.    The PRAs Are Unenforceable Anti-Competitive Contracts

Plaintiff fails to allege the existence of a valid contract.   The restrictive covenants contained in the PRAs, which prohibit the Nissens from disclosing or using, either during or after their employment with KLX, any "Proprietary Information" of KLX (*see* Cplt. Ex. E, § 2), are unenforceable because they are unreasonable in time, area and scope of information.   They also impose substantial hardship upon the Nissens and violate public policy in that they restrain the Nissens from earning a livelihood.

Under New York law, it is well settled that restrictive covenants between an employer and its former employee are enforceable only to the extent that they satisfy a "strict[] standard of reasonableness."   *Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303, 307 (1976).   This is

because, in light of "powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood," courts are reluctant to enforce a covenant which prevents a former employee from engaging in the same or similar profession.  *Id.* (quoting *Purchasing Assoc. v. Weitz*, 13 N.Y.2d 267, 272 (1963)); *see Karpinski v. Ingrasci*, 28 N.Y.2d 45, 50 (1971) (restriction was unreasonable where former employee would have been excluded from the only profession for which he was trained).

Pursuant to that "strict standard of reasonableness," courts will only enforce a restrictive covenant between an employer and its former employee if it:  (1) is no greater than is required for the protection of the legitimate interest of the employer; (2) does not impose undue hardship on the employee; and (3) is not injurious to the public.  *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388 (1999); *Frantic, LLC v. Konfino*, No. 13 Civ. 4516, 2013 WL 5870211, at *2 (S.D.N.Y. Oct. 30, 2013); *Int'l Bus. Machs. Corp. v. Visentin*, No. 11 Civ. 399, 2011 WL 672025, at *21 (S.D.N.Y. Feb. 16, 2011) (Preska, J.), *aff'd*, 437 Fed. App'x. 53 (2d Cir. 2011).  All three prongs are required; a violation of any one prong renders the covenant invalid.  *Id.*

In order to be "no greater than is required for the protection of the legitimate interest of the employer," the covenant must be reasonable in duration and geographic scope.  *See BDO Seidman*, 93 N.Y.2d at 389 (covenant must be "reasonable in time and area"); *Estee Lauder Cos. Inc. v. Batra*, 430 F. Supp. 2d 158, 180 (S.D.N.Y. 2006) ("durational reasonableness of a [restrictive covenant] is judged by the length of time for which the employer's confidential information will be competitively valuable.").  Additionally, New York courts limit "legitimate" employer interests "to the protection against misappropriation of the employer's trade secrets or of confidential customer lists, or protection from competition by a former employee whose services are unique or extraordinary."  *Visentin*, 2011 WL 672025, at *21.

Here, the restrictive covenants in the PRAs do not protect KLX's "legitimate interests," as that term has been defined by New York courts.  The breadth of the covenants – in terms of time, area and scope of information – covers significantly more than KLX's "trade secrets or . . . confidential information."   Indeed, there is absolutely no limitation in terms of time and area. And the term "Proprietary Information" encompasses virtually any and all information the Nissens may have come across during their tenure with KLX, as well as information which certainly is not confidential or proprietary.

For example, the definition of "Proprietary Information" includes this vague and overbroad "catch-all" provision:

> (vi)   Any other information, data, know-how or knowledge of a confidential or proprietary nature observed, used, received, conceived or developed by me in connection with my employment, consultancy, and/or tenure as an independent contractor by the Company . . .

(Cplt. Ex. E, § 2(vi)).  Additionally, notwithstanding the fact that KLX has identified several of its customers in the Complaint, the term "Proprietary Information" includes, *inter alia*:

> (ii)   The names and information relating to customers and prospective customers of the Company and/or persons, firms, corporations or other entities with whom the Company has provided goods or services at any time, including contact persons, addresses and phone numbers, their characteristics and preferences and types of services provided to or received from those customers and prospective customers.

(*Id.* § 2(i)(ii)).

Additionally, Plaintiff does not allege in any way whatsoever that the Nissens possess any "unique or extraordinary" skills such that KLX has a legitimate interest in restraining them. Because the PRAs' restrictive covenants encompass substantially more than that in which KLX has a "legitimate interest" in protecting, they do not satisfy the first prong of the "strict standard of reasonableness" and are unenforceable.  *See H. Meer Dental Supply Co. v. Commisso*, 269 A.D.2d 662, 664 (3d Dep't 2000) (As a general rule, "customer lists are not considered confidential' unless information contained therein is 'not known in the trade industry and [ ] discoverable [only] through extraordinary efforts."); *see also DeWitt Stern Grp.., Inc. v. Eisenberg*, No. 13 Civ. 3060, 2013 WL 5815512, at *6 (S.D.N.Y. Oct. 29, 2013) (quoting *Buhler v. Michael P. Maloney Consulting, Inc.,* 299 A.D.2d 190, 191 (1st Dep't 2002)) ("use of information about an employer's customers which is based on casual memory . . . is not actionable.").

The covenants also do not satisfy the second or third prongs of the standard.  If enforced, the Nissens will be forced to leave the industry in which they have worked for over a combined 65 years (notwithstanding the fact that they did not sign an agreement not to compete). Accordingly, the PRAs act as *de facto* worldwide, perpetual non-competition covenants that impose undue hardships upon the Nissens in violation of public policy.  *See Visentin*, 2011 WL 672025, at *24 (*citing BDO Seidman*, 93 N.Y.2d at 382) (public policy disfavors broad restrains on competition); *see also Savannah Bank, N.A. v. Savings Bank of the Fingerlakes*, 261 A.D.2d 917 (4th Dep't 1999) (citing cases) ("[R]estrictive covenants contained in employment contracts that tend to prevent an employee from pursuing a similar violation after termination are disfavored in the law.").

Accordingly, the PRAs are unenforceable, anti-competitive agreements, upon which a claim cannot be based.  The claim should be dismissed.

**B.**    **Plaintiff Fails to Plead Either a Breach or Damages**

KLX's breach of contract claim also should be dismissed because the Complaint is devoid of facts about how the Nissens breached the PRAs, *e.g.*, when, how and to whom the Nissens disclosed the KLX Information to third parties.   Nor does the Complaint include allegations concerning how KLX was damaged.  Likewise, the Complaint contains no facts as to how the Nissens breached KLX's "policies and procedures" (it does not even specify to which "policies and procedures" it is referring), or how KLX was damaged by such alleged breach.

Instead, Plaintiff asserts, in an entirely conclusory manner, that the Nissens breached the PRAs and "policies and procedures" by "disclosing KLX's confidential and proprietary information or know-how to third parties."  (Cplt. ¶ 86).  Such "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. at 678.

Accordingly, Plaintiff fails to plead the third and fourth elements of a claim for breach of contract, and the claim should be dismissed as against both Defendants.

**POINT II**

**PLAINTIFF FAILS TO STATE A CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS**

To state a claim for misappropriation of a trade secret under New York law, a party must plead that:  (1) it possessed a trade secret; and (2) the defendants *used* that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means. *Faiveley Trans. Malmo AB v. Wabtec Corp.,* 559 F.3d 110, 117 (2d Cir. 2009); *Alexander Interactive, Inc. v. Leisure Pro Ltd.*, No. 14 Civ. 2796, 2014 WL 4651942, at *4 (S.D.N.Y. Sept. 16, 2014).   As is detailed below, KLX fails to meet either pleading requirement.

**A.**   **Plaintiff Does Not Sufficiently Allege Its Trade Secrets**

New York law limits trade secret protection to "any formula, pattern, device or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it." *Faiveley*, 559 F.3d at 117; *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999).   In determining whether information constitutes a trade secret, courts consider six factors:

> (1) the extent to which the information is known outside of the business;
>
> (2) the extent to which it is known by employees and others involved in the business;
>
> (3) the extent of measures taken by the business to guard the secrecy of the information;
>
> (4) the value of the information to the business and its competitors;
>
> (5) the amount of effort or money expended by the business in developing the information; and
>
> (6) the ease or difficulty with which the information could be properly acquired duplicated by others.

*Id*.

Additionally, New York courts require a plaintiff asserting a claim for misappropriation of trade secrets to plead facts with sufficient particularity to provide defendants "fair notice of what the claim is and the grounds upon which it rests." *Alexander Interactive, Inc.*, 2014 WL 4651942, at *4 (quoting *Twombly*, 550 U.S. at 555). This requires, at minimum, that the plaintiff generally identify the trade secrets at issue. *Id.* (citing cases). Conclusory assertions that the information at issue constitutes trade secrets are insufficient. *Id.*

Here, KLX falls far short of pleading that the KLX Information constitutes a trade secret. Instead, Plaintiff asserts, in an entirely conclusory manner, that the KLX Information, consisting of "customer lists," "points of contact at customers," "customer information and requirements," "pricing information, "supplier information," "cost and volume information," "parts information" and "vendor lists," is highly confidential and proprietary trade secrets of KLX. (Cplt. ¶¶ 47, 67, 69, 75). The Complaint does not include any alleged *facts* as to *why* the KLX Information is a trade secret. Such a pleading that offers only "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. KLX's trade secret claim should be dismissed.

In any event, even if KLX's trade secret were adequately pleaded (which it is not), the information which KLX seeks to protect is not afforded trade secret protection under these facts. *See H. Meer Dental Supply Co.*, 269 A.D.2d at 664 (As a general rule, "customer lists are not considered confidential information" unless contained therein is "not known in the industry and discoverable only through extraordinary efforts."); *Silipos, Inc. v. Bickel*, No. 06 Civ. 02205, 2006 WL 2265055, at *4 (S.D.N.Y. Aug. 8, 2006) (holding that "business or financial information, such as market reports," as well as "market strategies" and "strategy information" is not a protected trade secret); *Buhler,* 299 A.D.2d at 191 ("It is well-settled that an employee's

recollection of information pertaining to the needs and habits of particular customers is not actionable.").

## B.   Plaintiff Does Not Sufficiently Allege Misappropriation

To adequately state a claim for misappropriation, a plaintiff must plead that the defendant either used the trade secret or disclosed it to a third party. *See Tactica Int'l, Inc. v. Atl. Horizon Int'l, Inc.*, 154 F. Supp. 2d 586, 607 (S.D.N.Y. 2001) (plaintiff was not likely to succeed on its trade secret claim because it failed to show that the defendants used the plaintiff's proprietary information); *Applied Info. Mgmt., Inc. v. Icart*, 976 F. Supp. 149, 156 (E.D.N.Y. 1997) (dismissing trade secret claim because there was no allegation that the defendant disclosed the trade secret to any third party or used it in competition with the plaintiff); *H. Meer Dental Supply Co.*, 269 A.D.2d at 664 (vacating preliminary injunction where, although plaintiff demonstrated that the defendant downloaded some information around the time he resigned from the plaintiff, plaintiff failed to show that the defendant used any of that data in their new employment).

Here, the Complaint is utterly devoid of any facts indicating that the Nissens either used the KLX Information or disclosed it to third parties. In fact, while Plaintiff alleges that M3 Tech *can* use the KLX Information to compete with KLX and undercut it in competitive bidding process, (Cplt. ¶ 45), that is as far as it goes. Plaintiff does not allege that the Nissens actually disclosed the KLX Information to M3 Tech (or anyone for that manner) or used the KLX Information as employees of M3 Tech. The paucity of facts establishing that the Nissens actually used or disclosed the KLX Information is fatal to KLX's claim for misappropriation, warranting dismissal.

**POINT III**

**PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF THE DUTY OF LOYALTY**

KLX's breach of the duty of loyalty claim against the Nissens also should be dismissed for failure to state a claim.

"New York law with respect to disloyal or faithless performances of employment duties is grounded in the law of agency, and has developed for well over a century." *Delville v. Firmenich, Inc.*, 920 F. Supp. 2d 446, 469 (S.D.N.Y. 2013) (quoting *Phansalkar v. Andersen Weinroth & Co., L.P.,* 344 F.3d 184, 200 (2d Cir. 2003)). That is, the duty of loyalty means that agents are "prohibited from acting in any manner inconsistent with his agency or trust and [are] at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." *Id.* Duty of loyalty claims under New York law, however, are "limited to cases where the employee, acting as the agent of the employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks." *Delville*, 920 F. Supp. 2d at 469 (quoting *Farricker v. Penson Dev., Inc.,* No. 07 Civ. 11191, 2010 WL 845983, at *10 (S.D.N.Y. Mar. 4, 2010)); *see also Fada Int'l Corp. v. Cheung,* 57 A.D.3d 406, 406 (1st Dep't 2008) (upholding the dismissal of plaintiff's duty of loyalty claim "since there is no claim that defendants used plaintiff's time, facilities or proprietary secrets in setting up their new business").

Here, Plaintiff fails to allege that the Nissens, acting as agents of KLX, diverted any business opportunities to themselves or to M3 Tech. Nor does Plaintiff allege that the Nissens accepted improper kickbacks. While the Complaint does include allegations that the Nissens sent the KLX Information to their personal e-mail accounts, there is not a single allegation stating or even indicating that the Nissens used that information to benefit themselves or M3

Tech.  As a result, KLX's duty of loyalty claim should be dismissed.  *See Delville*, 920 F. Supp. 2d at 470 (dismissing duty of loyalty claim where there was no evidence that the employee used the employer's confidential information to benefit his subsequent employers).

### POINT IV

### PLAINTIFF IS NOT ENTITLED TO PERMANENT INJUNCTIVE RELIEF

KLX's final claim, seeking a permanent injunction prohibiting the Nissens from disclosing the KLX Information to third parties, also fails as a matter of law.

A permanent injunction is a drastic remedy that should not be granted lightly.  *In re Reserve Fund Secs. and Derivative Litig. v. Reserve Mgmt. Co*., No. 09 Civ 4346, 2013 WL 5432334, at *21 (S.D.N.Y. Sept. 30, 2013); *Peyton v. PWV Acquisition LLC*, 39 Misc. 3d 1228(A) (Sup. Ct. N.Y. Cnty. 2013).  In order to obtain a permanent injunction, a plaintiff must demonstrate that:  (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citing cases).

As discussed above in detail, Plaintiff fails to allege that KLX has suffered any injury (never mind an irreparable injury).  As such, Plaintiff fails to state a claim for a permanent injunction, and the claim should be dismissed.

## POINT V

### THE COURT SHOULD ORDER PLAINTIFF TO PROVIDE A MORE DEFINITE STATEMENT OF ANY OF THE COUNTS IT DOES NOT DISMISS

Rule 12(e) provides relief from a complaint that is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e).  A district court has discretion to grant a motion for more definite statement to pare down "shotgun pleadings" or where it would otherwise be "unreasonable to require defendant to respond."  *In re Methyl Tertiary Butyl Ether Prods. Liab. Lit.*, No. 08 Civ. 00312, 2008 U.S. Dist. LEXIS 59026, at *4-5 (S.D.N.Y. Aug. 4, 2008); *see also Kelly v. L.L. Cool J*, 145 F.R.D. 32, 37 (S.D.N.Y. 2002).  If the Court declines to dismiss any of KLX's claims, it should require KLX to provide a more definite statement of each surviving claim, including:

- the subject matter of the alleged trade secret and facts plausibly establishing that the information is in fact a trade secret and that the Nissens misappropriated it;

- an explanation of how KLX was damaged by the Nissens' alleged misappropriation of its trade secrets, including the identity of clients or potential clients KLX lost; and

- facts to support the legal conclusion that the Nissens breached the PRA and an explanation of how KLX was damaged by any breach, including the identity of clients or potential clients KLX lost.

## CONCLUSION

The Complaint should be dismissed in its entirety and with prejudice.   Alternatively,

KLX should be directed to provide a more definite statement of its surviving claims pursuant to

Fed. R. Civ. P. 12(e).

Dated:  Uniondale, New York
        May 26, 2015

                                        Respectfully submitted,

                                        RUSKIN MOSCOU FALTISCHEK, P.C.


                                        By:    /s/ Norman R. Cerullo
                                               Norman R. Cerullo
                                               Jennifer L. Hartmann
                                               1425 RXR Plaza
                                               East Tower, 15th Floor
                                               Uniondale, New York  11556
                                               Telephone:  (516) 663-6600

                                               *Attorney for Defendants*
                                               *David Nissen and Joan Nissen*

/617544-2