UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

KLX, INC., a Delaware Corporation,                    No.: 15-cv-2782 (LAP)

                  Plaintiff,

        -against-

DAVID NISSEN and JOAN NISSEN,

                  Defendants.

---------------------------------------------------------X

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER AND <u>PRELIMINARY INJUNCTION</u>**

Michael C. Marsh
  *michael.marsh@akerman.com*
Scott M. Kessler
  *scott.kessler@akerman.com*
Andrew Loewenstein (admitted *pro hac vice*)
  *andrew.loewenstein@akerman.com*
Christopher R. Lepore
  *christopher.lepore@akerman.com*
AKERMAN LLP
  666 Fifth Avenue, 19th Floor
  New York, New York 10103
  Tel. (212) 880-3800
  Fax (212) 880-8965

ATTORNEYS FOR KLX INC.

Dated: September 18, 2015
       New York, New York

{36172424;3}

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii
INTRODUCTION AND BACKGROUND ......................................................................... 1
ARGUMENT ......................................................................................................................... 3
    I.   DEFENDANTS' PROPOSED PRELIMINARY INJUNCTION IS DEFICIENT. ........... 3
    II.  ABSENT INJUNCTIVE RELIEF, PLAINTIFF WILL SUFFER IRREPARABLE HARM ......................................................................................................................... 5
    III. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS. ............................................ 8
    IV. THE BALANCE OF HARDSHIPS TIPS IN PLAINTIFF'S FAVOR ............................. 9
CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Estee Lauder Companies Inc. v. Batra*,
 430 F. Supp. 2d 158 (S.D.N.Y. 2006) ...............................................................................6, 7, 9

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
 559 F.3d 110 (2d Cir. 2009) .....................................................................................................6, 7

*FMC Corp. v. Taiwan Tainan Giant Indus. Co.*,
 730 F.2d 61 (2d Cir. 1984) ..........................................................................................................7

*Leibowitz v. Aternity, Inc.*,
 No. 10 Civ. 2289 (ADS), 2010 WL 2803979 (E.D.N.Y. July 14, 2010) ...............................6,9

*Liberty Power Corp., LLC v. Katz*,
 No. 10-CV-1938 NGG CLP, 2011 WL 256216 (E.D.N.Y. Jan. 26, 2011) ..............................7

*N. Atl. Instruments, Inc. v. Haber*,
 188 F.3d 38 (2d Cir. 1999) ......................................................................................................7, 9

*Otokoyama Co. v. Wine of Japan Imp., Inc.*,
 175 F.3d 266 (2d Cir. 1999) .........................................................................................................9

*Payment Alliance Int'l, Inc. v. Ferreira*,
 530 F. Supp. 2d 477 (S.D.N.Y. 2007) .........................................................................................6

*Tom Doherty Associates, Inc. v. Saban Entm't, Inc.*,
 60 F.3d 27 (2d Cir. 1995) .............................................................................................................8

Plaintiff KLX Inc. ("KLX") hereby submits the following Reply Memorandum of Law in Further Support of its Motion for a Temporary Restraining Order and Preliminary Injunction (the "Motion").[1]

## INTRODUCTION AND BACKGROUND

Defendants' Opposition is replete with mischaracterizations of the law and facts in the Motion and Complaint, as well as improper and inaccurate references to confidential settlement communications. Defendants' Opposition, as shown below, lacks any merit whatsoever and, in fact, concedes that KLX is entitled to the entry of a preliminary injunction.

As set forth in the Complaint and Moving Brief, despite their obligations to KLX (both contractually and under New York law), Defendants admittedly acted in concert during their last weeks of employment with KLX to systematically misappropriate KLX's confidential and proprietary information (the "KLX Confidential Information"), which KLX expended considerable resources to develop, maintain, and protect, including, but not limited to, by limiting access to the KLX Confidential Information (both internally and externally) and storing such materials in multi-tiered password protected databases. Notably, Defendants *admit* that they intended to use the KLX Confidential Information they stole for the benefit of their new employer, J&K Electronic d/b/a M3 Technologies ("M3 Tech").[2]

Defendants resigned from KLX within minutes of each other on February 27, 2015. Subsequently, KLX discovered Defendants' misconduct after reviewing their work email

---

[1] The Memorandum Of Law In Support Of Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order, [D.E. 8], will be referred to herein as "Plaintiff's Moving Brief." All citations to the Plaintiff's Moving Brief appear as "Mot. at [page number]." Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order, [D.E. 48], will be referred to herein as the "Opposition" and citations to the Opposition appear as "Opp. at [page number]."

[2] Defendants' respective responses to KLX's requests for admissions are collectively annexed to the accompanying Declaration of Scott M. Kessler, dated September 18, 2015 ("Kessler Dec."), as Exhibit "A".

accounts. Contrary to Defendants' misrepresentations in their Opposition, KLX took immediate action as soon as it discovered Defendants' misconduct by sending letters to Defendants on March 11, 2015 in an effort to resolve this matter without litigation (despite no obligation to do so).[3] However, after approximately one month during which Defendants unapologetically refused to provide the requisite assurances to KLX concerning their misappropriation of the KLX Confidential Information and repeatedly failed to demonstrate that they were negotiating in good faith, Plaintiff commenced this action to prevent Defendants from inflicting any further irreparable harm on April 9, 2015. *See* [D.E. 1].

On April 10, 2015, the parties appeared before the Honorable Kenneth M. Karas in connection with Plaintiff's application for a temporary restraining order (the "TRO Hearing").[4] Judge Karas granted Plaintiff's application. Indeed, as Judge Karas found, KLX established in its Moving Brief and Complaint that, as a matter of law, it will suffer irreparable harm in the absence of injunctive relief due to Defendants' misconduct. *See* TRO Trans. at 36-40. Moreover, Plaintiff demonstrated that it was likely to succeed on the merits of its breach of contract, misappropriation of trade secrets, breach of duty of loyalty and permanent injunction causes of action. *See* TRO Trans. at 40-41.

Nevertheless, in spite of Judge Karas' holdings, Defendants' evasiveness and lack of forthrightness continued as discovery ensued after the TRO hearing. To that end, rather than complying with their discovery obligations and offering any modicum of transparency, Defendants refused to enter into an appropriate protocol to search their Electronically Stored

---

[3] In light of Plaintiff's pre-litigation and other repeated efforts to resolve this matter, Defendants' contention that KLX is somehow trying to extract a "pound of flesh" from the Defendants through this litigation is thus completely meritless. *See* Opp. at 1.

[4] References to the transcript from the hearing before Judge Karas on April 10, 2015 in connection with Plaintiff's application for a temporary restraining order appear herein as "TRO Trans. at ___." A copy of the TRO Trans. is annexed to the Kessler Dec. as Exhibit "B".

Information ("ESI") or a schedule for expedited discovery.[5] As such, after Plaintiff made an application to Your Honor, this Court granted Plaintiff's request for expedited discovery and required Defendants to enter into Plaintiff's proposed ESI protocol. *See* [D.E. 23]; [D.E. 27]. Your Honor found there to be a "direct connection between the discovery sought and the confidential information at the heart of the potential injury." *Id*.

In their Opposition, while failing to recognize the full gravity of their actions, Defendants apparently concede that their conduct entitles KLX to some measure of injunctive relief by appending a proposed preliminary injunction for the Court's consideration. *See* Opp. at 11-13. However, Defendants' proposal is deficient in several ways. Moreover, to the extent Defendants oppose the Motion, as shown below and in the Moving Brief (and Plaintiff's Opposition to Defendants' Motion to Dismiss and For a More Definite Statement), all of Defendants' arguments are specious and unconvincing. In reply, KLX respectfully requests that the Court enter a preliminary injunction in the form annexed as Exhibit "C" to the Kessler Dec.

## ARGUMENT

### I. DEFENDANTS' PROPOSED PRELIMINARY INJUNCTION IS DEFICIENT.

Defendants purportedly "do not oppose the fundamental purpose" of KLX's proposed injunctive relief, including: (i) the requirement that they return and/or destroy all KLX Confidential Information; and (ii) the prohibition on them using and/or disseminating KLX Confidential Information. Opp. at 11. Defendants have thus submitted their own proposed preliminary injunction for the Court's consideration. However, Defendants' proposal is deficient in several respects. Accordingly, in connection herewith, Plaintiff has submitted its own proposed preliminary injunction for the Court's consideration. *See* Kessler Dec., Exhibit "C."

---

[5] Defendant David Nissen freely admits to deleting KLX Confidential Information from his computer, an obvious effort to conceal the extent of his wrongdoing from KLX.

At the outset, Defendants' proposal to "expunge" (*see* Opp. at 13) the KLX Confidential Information in their possession, custody and/or control is illogical and unacceptable. A preliminary injunction is, of course, a temporary measure which the Court would enter pending a trial on the merits. Defendants' request would result in the destruction and intentional deletion of crucial electronic evidence during an ongoing litigation. Plaintiff's proposed preliminary injunction thus removes Defendants' offer to spoliate evidence.

Moreover, Defendants' proposed preliminary injunction does not include adequate measures to ensure that Plaintiff will not be harmed. KLX's version of the preliminary injunction fully protects against Defendants' (and those acting at the direction of or in concert with Defendants) use, disclosure and/or dissemination of KLX's trade secret and proprietary information.

Notably, with respect to KLX's previous proposals, Defendants complain (as they have repeatedly throughout this litigation) that KLX's proposed injunctive relief is somehow overbroad, vague and ambiguous. *See* Opp. at 11-12. However, Judge Karas, in adopting KLX's proposed TRO nearly in its entirety, addressed this concern directly at the TRO Hearing:

> I think . . . an injunction that says you can't use the information that you took from your former employer . . . is a fairly bright line that [Defendants] can't cross. They're allowed to do whatever it is that they do. They just can't use the trade secret information that belongs to KLX.

TRO Trans. (Kessler Dec, Exhibit "B") at 41:12-41:16.

Accordingly, KLX's proposal is appropriately tailored, under the circumstances, to prevent Defendants' use and access to KLX proprietary information while allowing Defendants to continue to earn a livelihood.

## II. ABSENT INJUNCTIVE RELIEF, PLAINTIFF WILL SUFFER IRREPARABLE HARM.

In its Motion, Plaintiff established that, in the absence of injunctive relief, it will suffer irreparable harm due to Defendants' theft of KLX Confidential Information immediately prior to leaving KLX to work for a competitor, M3 Tech. *See* Mot. 14-17. Defendants nevertheless argue that Plaintiff cannot satisfy the irreparable harm requirement for purposes of a preliminary injunction because Plaintiff does not yet have evidence that Defendants disclosed this information to their new employer, M3 Tech. *See* Opp. at 6. Defendants are wrong.

At the TRO Hearing, Judge Karas conclusively found that Defendants' misconduct will cause Plaintiff irreparable harm in the absence of injunctive relief because: (i) Defendants stole the KLX Confidential Information under circumstances which suggested they would inevitably disclose it to their new employer, M3 Tech (a competitor of KLX); (ii) Defendants previously acknowledged that Plaintiff would suffer irreparable harm in their employment agreements (the Proprietary Rights Agreements or "PRAs") if they stole or disseminated KLX Confidential Information or otherwise breached the PRAs; and (iii) the trade secret information stolen by Defendants would not be compensable through monetary damages. *See* TRO Trans. at 36-40.

With respect to the first point, Judge Karas specifically found that proof of disclosure is unnecessary to a finding of irreparable harm where, as here, Defendants stole confidential and/or proprietary information immediately before leaving to work for a competitor:

> While there may not be proof that the defendants here have taken the information and have used it, at least to the point that plaintiff knows, to its detriment, there is certainly plenty of proof that right before they left, as I said, the defendants sent e-mails to themselves using, or basically taking this password protected information, trade secret information to themselves, and then as I said, right after that went and worked for a competitor.

TRO Trans. 37:4- 37:12. Judge Karas further observed that "even if a trade secret has not yet been disclosed, irreparable harm may be found based upon a finding that trade secrets will inevitably be disclosed where the movant competes directly with the new employer, and the transient employee possesses highly confidential information or knowledge concerning things like marketing strategy." *Id*. at 37:23 - 38:5 (citing *Estee Lauder Companies Inc. v. Batra*, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006)). *See also Payment Alliance Int'l, Inc. v. Ferreira*, 530 F. Supp. 2d 477, 482 (S.D.N.Y. 2007).

Defendants claim that *Leibowitz v. Aternity, Inc*., No. 10 Civ. 2289 (ADS), 2010 WL 2803979, at *20 (E.D.N.Y. July 14, 2010) has since been discredited by *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009), and "its progeny." This is incorrect: *Faiveley*, which was decided in 2009, predates *Leibowitz*, which was decided in 2010. Moreover, contrary to Defendants' misrepresentations, *Faiveley* did not address the inevitable disclosure doctrine. Defendants do not cite any authority to support their contention that the inevitable disclosure has been discredited.

After then noting the importance of Defendants' acknowledgment that Plaintiff would be irreparably harmed by misappropriation of the KLX Confidential Information, Judge Karas then described how Plaintiff would not be made whole by an award of monetary damages given the nature of trade secret information stolen by Defendants:

> But the trade secret information and what the cases talk about in terms of the difficulty in quantifying damages is the notion that this information can be used in ways that a plaintiff may never be able to quantify. So it may be that there are new customers that KLX didn't even know it could get and it might lose because of the use of this proprietary information. It may be that there are bids that they will lose out because M3 would know KLX's marketing strategy and its margins and its pricing and be able to win those contracts and KLX would not be able to be compensated because they would not be able to identify specifically the link between the

> trade secret information and the loss of that business. And that's
> really what the cases talk about.

TRO Trans. 39:14 – 40:1. *See also FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984) ("A trade secret once lost is, of course, lost forever."); *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 47 (2d Cir. 1999); *Estee Lauder Companies Inc.*, 430 F. Supp. 2d at 174. Thus, Judge Karas made extensive and well-reasoned findings concerning Plaintiff's ability to demonstrate it will suffer irreparable harm in the absence of injunctive relief.

In light of Judge Karas' findings, Plaintiff need not demonstrate that a presumption of irreparable harm should apply here. Defendants nonetheless protest that a presumption of irreparable harm should not be applied under the present circumstances. However, as Defendants themselves note, "[a] rebuttable presumption of irreparable harm might be warranted in cases where there is *a danger* that, unless enjoined, a misappropriator of trade secrets *will disseminate those secrets to a wider audience* or *otherwise irreparably impair the value* of those secrets." *Faiveley*, 559 F.3d at 118 (emphasis added).

Defendants' arguments overlook the Second Circuit's express language that such materials *need not have already been disseminated* for the presumption to apply. Defendants' reliance on *Liberty Power Corp., LLC v. Katz*, No. 10-CV-1938 NGG CLP, 2011 WL 256216, at *6 (E.D.N.Y. Jan. 26, 2011) is inapposite. There, unlike here, the plaintiff failed to "adequately explain why it should benefit from the distinction drawn by the *Faiveley* court's dictum" and how it would suffer irreparable harm by the defendants' misappropriation. *Id*. Moreover, in *Katz*, the plaintiff had already "calculated the potential renewal value of the contracts between it and the customers about whom Defendants obtained Plaintiff's proprietary information." *Id*.

Here, because the trade secret information stolen relates to the heart of KLX's business, the harm of a competitor obtaining such information extends beyond the loss of any readily

ascertainable accounts. Defendants' continued, and M3 Tech's eventual, possession of such information would give them competitive information as to KLX's entire mode of operation, and, as Judge Karas found, would prejudice KLX in unknown ways. Defendants stole KLX Confidential Information, immediately left to work for a competitor, M3 Tech, and admitted that they intended to use the KLX Confidential Information for the benefit of their new employer. If Defendants are permitted to follow through with their intentions and disseminate the KLX Confidential Materials to M3 Tech, the KLX Confidential Materials would immediately lose any value to KLX, as a direct competitor would be empowered to use this information to undercut KLX in the marketplace. Plaintiff, as set forth in its Moving Brief, may also suffer irreparable harm through the loss of its goodwill with respect to potential loss of its business with Boeing, General Electric (including Middle River Aircraft Systems) and Meggit PLC, in addition to its stature in the Aerospace industry at large. *See Tom Doherty Associates, Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995).

Finally, Defendants' argument that Plaintiff somehow delayed in instituting this action is especially specious. *See* Opp. at 6. As noted above, Plaintiff first contacted Defendants on March 11, 2015 (approximately two weeks after Defendants employment) in connection with their breach. Plaintiff then spent approximately four (4) weeks attempting to resolve this matter without litigation. The absurdity of this position is highlighted by the fact that Defendants, at the same time they fault Plaintiff with delay, accuse Plaintiff of attempting to extract a "pound of flesh" by litigating this matter. *See* Opp. at 1.

### III. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.

In the Moving Brief, Plaintiff demonstrated that it is likely to succeed on the merits, as it demonstrated a likelihood of meeting all of the elements alleged in its causes of action for misappropriation of trade secrets, breach of contract, breach of duty of loyalty and permanent

injunction.  *See* Mot. at 17-24.  Indeed, Judge Karas found that KLX is likely to succeed on the merits or, in the alternative, there "are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor" of KLX.  *Otokoyama Co. v. Wine of Japan Imp., Inc.*, 175 F.3d 266, 270 (2d Cir. 1999); TRO Hearing at 40.  In finding that KLX is likely to succeed on the merits, Judge Karas noted, "New York law itself imposes a duty not to use trade secrets in competition with a former employer." (TRO Hearing 40:12-40:14); *see also N. Atl. Instruments, Inc.*, 188 F.3d at 47-48.

Defendants nevertheless attempt to argue – based on their own self-serving representations (which are currently unchallenged because Defendants failed to appear for depositions) – that, because they purportedly have not disclosed or used KLX Confidential Information, Plaintiff is unlikely to succeed on the merits.  As discussed in Section II above, Judge Karas expressly rejected this legally irrelevant argument.  *See* TRO Trans. at 37; *see also Leibowitz*, No. 10 CV 2289 (ADS), 2010 WL 2803979, at *20.  To the extent Defendants rely on the arguments raised in their Motion to Dismiss and For a More Definite Statement (*see* Opp. at 20), KLX refers the Court to its Opposition thereto.  *See* [D.E. 56].

IV. **THE BALANCE OF HARDSHIPS TIPS IN PLAINTIFF'S FAVOR**

There is no doubt the balance of hardships tips in Plaintiff's favor.  *See* Mot. at 24; *Estee Lauder Companies Inc.*, 430 F. Supp. 2d at 182 ("[The plaintiff] has shown that in the absence of a preliminary injunction it is likely to suffer irreparable harm if [the defendant] were to use and/or disclose its confidential information. Accordingly, the evidence demonstrates that the balance of hardships tips decidedly in the plaintiff's] favor").  Defendants' sole argument on this point is that the "oppressive nature" of KLX's proposed preliminary injunction would somehow operate as a "de facto covenant not to compete."  Opp at. 10.  Yet, as discussed in Section I above, Judge Karas rejected this argument.  *See* TRO Trans. at 41.  And Defendants, while

bemoaning KLX's proposed preliminary injunction as "oppressive," have, at the same time, agreed to extend the TRO for a period of five (5) months. Accordingly, the balance of the hardships tips in Plaintiff's favor.

## CONCLUSION

For all of the reasons set forth in Plaintiff's Moving Brief and the Complaint, Plaintiff respectfully requests that this Court grant Plaintiff's Motion and grant any other such relief it deems just and proper.

Dated: New York, New York
       September 18, 2015

Respectfully submitted,

    AKERMAN LLP
    666 Fifth Avenue
    New York, New York 10103
    (212) 880-3800

By:   /s/ Scott M. Kessler
      Michael M. Marsh
      Scott M. Kessler
      Andrew M. Loewenstein
      (admitted *pro hac vice*)
      Christopher R. Lepore

ATTORNEYS FOR PLAINTIFF KLX INC.